UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| PHILLIP J. BARKETT, JR., | ) | Civil Action No. 1:08-CV-2495 (GEL) |
| Plaintiff, | ) | |
| -against- | ) | |
| SOCIÉTÉ GÉNÉRALE, DANIEL BOUTON, and ROBERT A. DAY, | ) | |
| Defendants. | ) | |
| CITY OF TAYLOR EMPLOYEES RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, | ) | Civil Action No. 1:08-CV-2752 (GEL) |
| Plaintiff, | ) | |
| vs. | ) | |
| SOCIÉTÉ GÉNÉRALE GROUP, DANIEL BOUTON, and ROBERT A. DAY, | ) | |
| Defendants. | ) | |
| HAROLD OBERKOTTER, Individually and On Behalf of All Others Similarly Situated, Plaintiff, | ) | Civil Action No. 1:08-CV-2901 (GEL) |
| vs. | ) | |
| SOCIÉTÉ GÉNÉRALE, DANIEL BOUTON, and ROBERT A. DAY, | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE NEW JERSEY
CARPENTERS ANNUITY AND PENSION FUNDS FOR CONSOLIDATION,
APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF
LEAD PLAINTIFF'S SELECTION OF CO-LEAD COUNSEL**

435033_1.DOC

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................1

    I.     PROCEDURAL BACKGROUND..............................................................2

    II.    FACTUAL BACKGROUND ....................................................................2

ARGUMENT ..................................................................................................................6

    I.     THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES ..........6

    II.    MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF ................................6

         A.    THE REQUIREMENTS OF THE PSLRA .......................................6

         B.    MOVANT SATISFIES THE LEAD PLAINTIFF
              REQUIREMENTS OF THE PSLRA .........................................8

              1.     Movant Has Complied With The PSLRA, Is The Most
                    Adequate Plaintiff Under the PSLRA, And Should Be
                    Appointed Lead Plaintiff..................................................8

              2.     Movant Has the Requisite Financial Interest in the Relief
                    Sought by the Class...........................................................8

              3.     Movant Otherwise Satisfies Rule 23............................................10

               4.     The New Jersey Funds Group Is An Institutional Investor
                    With The Largest Financial Interest In The Relief Sought...........13

    III.    THE COURT SHOULD APPROVE MOVANT'S CHOICE OF CO-
          LEAD COUNSEL ...............................................................................17

CONCLUSION.............................................................................................................17

435033_1.DOC

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Appleyard v. Wallace,*
    754 F.2d 955 (11th Cir. 1985) ...................................................................................11

*In re Baan Co. Sec. Litig.,*
    186 F.R.D. 214 (D.D.C. 1999)...................................................................................15

*Babcock v. Computer Associates International,*
    212 F.R.D. 126 (E.D.N.Y. 2003)..........................................................................11, 12

*Bowman v. Legato Systems, Inc.,*
    195 F.R.D. 655 (N.D. Cal. 2000)...............................................................................15

*Burke v. Ruttenberg,*
    102 F. Supp. 2d 1280 (N.D. Ala. 2000).......................................................................14

*In re Cavanaugh,*
    306 F.3d 726 (9th Cir. 2002) .................................................................7, 8, 10, 17

*In re Cendant Corp. Litig.,*
    264 F.3d 201 (3d Cir. 2001)(B)(bb).......................................................................8, 15

*In re Faro Technologies Sec. Litig.,*
    No. 6:05-CV-1810-ORL-22 (DAB), 2006 U.S. Dist. LEXIS 235007 (M.D. Fla. Apr. 26,
    2006) ........................................................................................................................14

*Ferrari v. Gisch,*
    225 F.R.D. 599 (C.D. Cal. 2004).............................................................................16

*Fischler v. Amsouth Bancorporation,*
    No. 96-1567-CIV-T-17A, 1997 U.S. Dist. LEXIS 2875 (M.D. Fla. Feb. 6, 1997).................11

*In re GMC Pick-Up Truck Fuel Tank Products Liability Litig.,*
    55 F.3d 768 (3d Cir. 1995)......................................................................................12

*Gluck v. CellStar Corp.,*
    976 F. Supp. 542 (N.D. Tex. 1997) ...............................................................14, 15, 16

*Goplen v. 51job, Inc.,*
    No. 05 Civ. 0769, 2005 U.S. Dist. LEXIS 15059 (S.D.N.Y. July 26, 2005) ...........................9

*Greebel v. FTP Software, Inc.,*
    939 F. Supp. 57 (D. Mass. 1996)...........................................................................7, 15

*Johnson v. Celotex Corp.*,
    899 F.2d 1281 (2d Cir. 1990) ...................................................................................6

*Kennedy v. Tallant*,
    710 F.2d 711 (11th Cir. 1983) .......................................................................... 11-12

*Kirkpatrick v. J. C. Bradford & Co.*,
    827 F.2d 718 (11th Cir. 1987) ................................................................................12

*Lax v. First Merchandises Acceptance Corp.*,
    No. 97-C-2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) .....................7, 11, 13

*In re Network Associates Sec. Litig.*,
    76 F. Supp. 2d 1017 (N.D. Cal. 1999) ....................................................................15

*Philips v. Joint Legislative Committee on Performance & Expenditure Review*,
    637 F.2d 1014 (5th Cir. 1981) ................................................................................11

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) .........................................................................7, 11

*Priest v. Zayre Corp.*,
    118 F.R.D. 552 (D. Mass. 1988).............................................................................11

*Ravens v. Iftikar*,
    174 F.R.D. 651 (N.D. Cal. 1997).............................................................................15

*In re Razorfish Inc. Sec. Litig.*,
    143 F. Supp. 2d 304 (S.D.N.Y. 2001).......................................................................15

*Rossini v. Ogilvy & Mather, Inc.*,
    798 F.2d 590 (2d Cir. 1986).....................................................................................11

*Schulman v. Lumenis, Ltd.*,
    No. 02 Civ. 1989 (DAB), 2003 U.S. Dist. LEXIS 10348 (S.D.N.Y. June 17, 2003)..............14

**DOCKETED CASES**

*Barkett v. Société Générale*,
    No. 1:08-CV-2495 (S.D.N.Y. filed Mar. 12, 2008)........................................................1

*City Of Taylor Employees Retirement System v. Société Générale Group*,
    No. 1:08CV-2752 (S.D.N.Y. filed Mar. 14, 2008) .......................................................1

*Oberkotter v. Société Générale*,
    No. 1:08-CV-2901 (S.D.N.Y. filed Mar. 19, 2008).......................................................1

435033_1.DOC

## STATUTES, RULES AND CONGRESSIONAL MATERIAL

15 U.S.C. § 78j(b) .............................................................................................................2

15 U.S.C. § 78t(a) .............................................................................................................2

15 U.S.C. § 78u-4(a) .........................................................................................................6

15 U.S.C. § 78u-4(a)(1) .....................................................................................................6

15 U.S.C. § 78u-4(a)(3)(A) ................................................................................................7

15 U.S.C. § 78u-4(a)(3)(A)(i) ........................................................................................2, 6

15 U.S.C. § 78u-4(a)(3)(B) ........................................................................................ *passim*

15 U.S.C. § 78u-4(a)(3)(B)(i) ............................................................................................6

15 U.S.C. § 78u-4(a)(3)(B)(iii) ............................................................................1, 7, 8, 16

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ...........................................................................16

15 U.S.C. § 78u-4(a)(3)(B)(v) .........................................................................................16

17 C.F.R. § 240.10b-5 .......................................................................................................3

Fed. R. Civ. P. 23 ..........................................................................................................5, 6

Fed. R. Civ. P. 23(a) .......................................................................................................10

Fed. R. Civ. P. 42(a) .........................................................................................................6

H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733.........13, 14

S. Rep. No. 10498 (1995) ...............................................................................................16

## OTHER AUTHORITIES

Elliot J. Weiss & John S. Beckerman, *Let The Money Do The Monitoring: How Institutional Investors Can Reduce Agency Costs In Securities Class Actions,* 104 Yale L.J. 2053, 2095 (1995) .......................................................................................................................16

## INTRODUCTION

Class members the New Jersey Carpenters Annuity and Pension Funds (the "New Jersey Funds Group" or "Movant") have suffered losses of approximately $1,409,263 as a result of their investments in the securities of Société Générale ("SG" or the "Company" or "Defendant"). Movant believes that it has incurred the largest loss of any other movant, and as such, it has the largest financial interest in the outcome of this litigation, and satisfies the requirements to qualify as the "most adequate plaintiff" as defined by the Private Securities Litigation Reform Act of 1995 ("PSLRA").

As the most adequate plaintiff, Movant hereby respectfully requests that the Court: (1) consolidate the three related actions pending before this Court;[1] (2) appoint Movant as Lead Plaintiff pursuant to the PSLRA; (3) approve Movant's selection of Milberg LLP ("Milberg") and Gardy & Notis, LLP ("Gardy & Notis") as Co-Lead counsel in this action and in any subsequently filed and/or related cases; and (4) grant such other and further relief as the Court may deem just and proper.

Movant should be appointed Lead Plaintiff because Movant: (1) timely filed a motion for appointment of Lead Plaintiff; (2) suffered losses of approximately $1,409,263 in connection with its transactions in SG securities during the relevant period, and thus has a substantial financial interest in the litigation; and (3) will adequately represent the interests of the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). Furthermore, Movant's choice of Milberg and Gardy & Notis as

---

[1] Three related actions alleging violations of the securities laws against and certain of its former and current officers and/or directors are pending in the Southern District of New York, including: (1) *Barkett v. Société Générale*, No. 1:08-CV-2495 (S.D.N.Y. filed Mar. 12, 2008) (GEL); (2) *City Of Taylor Employees Retirement System v. Société Générale Group*, No. 1:08-CV-2752 (S.D.N.Y. filed Mar. 14, 2008) (GEL); and (3) *Oberkotter v. Société Générale*, No. 1:08-CV-2901 (S.D.N.Y. filed Mar. 19, 2008) (GEL).

Co-Lead Counsel should be approved by the Court because, pursuant to the PSLRA, the presumptive Lead Plaintiff selects Lead or Co-Lead Counsel, and Milberg and Gardy & Notis have extensive experience in the prosecution of securities class actions and will more than adequately represent the interests of all class members.

## I.    PROCEDURAL BACKGROUND

As noted in the introduction, this is a federal class action brought on behalf of persons and entities who purchased or otherwise acquired SG securities during the Class Period, and who were damaged thereby, seeking to pursue remedies against SG and certain of its officers and directors under the Exchange Act and SEC Rule 10b-5.

This action was commenced in this jurisdiction on or about March 12, 2008. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), on March 12, 2008, the first notice that a class action had been initiated against Defendants was published on *Business Wire*, a widely circulated national business-oriented wire service advising members of the proposed class members of their right to move the Court to serve as Lead Plaintiff within 60 days. *See* Bronson Decl., Ex. C.

The New Jersey Funds Group is a member of the class (*see* Bronson Decl., Ex. A) and is timely filing this motion within the 60-day period following publication of the first notice pursuant to Section 21D of the PSLRA, as discussed herein.

## II.    FACTUAL BACKGROUND

This federal class action (the "Action") is brought on behalf of persons and entities who purchased or otherwise acquired SG securities between August 1, 2005 and January 23, 2008, inclusive (the "Class Period"), and who were damaged thereby, seeking to pursue remedies under federal securities law. The Action is brought pursuant to §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and

Securities Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5. Defendants

include SG and certain of its officers and directors.

SG is a large financial services group which employs over 120,000 employees worldwide

in three core businesses: Retail Banking & Financial Services, Global Investment Management

& Services, and Corporate & Investment Banking ("CIB").  The Company was formed in 1864

and has headquarters in Paris, France.  SG opened its first office in the United States in 1938 and

its main U.S. branch is located within this district.  Today it stands as one of the largest foreign

banking organizations in the United States with approximately 2,900 professionals working in 13

U.S. cities.

During the Class Period, SG senior executives are alleged to have violated the federal

securities laws by publicly issuing false and misleading statements and failing to disclose

material adverse facts concerning: (1) the Company's risk management procedures, policy and

practices; (2) the Company's exposure to subprime real estate loans and collateralized debt

obligations ("CDOs"), and (3) the Company's internal controls.  Specifically, during the Class

Period, Defendants represented that the Company maintained conservative provisioning and risk

management, risk controls and monitoring, and expertise in risk analysis and structured finance,

including CDO vehicles, and that the Company had "very little exposure" to the subprime

segment of the U.S. housing market, thus giving investors no warning as to the true extent of the

Company's losses relating to that segment and issues relating to its risk management and internal

controls.

These representations were materially false and misleading.  On January 23, 2008, the

last day of the Class Period, SG unexpectedly announced that it would be writing down 2.05

billion euros for the fourth quarter of 2007, including 1.1 billion euros relating to U.S. housing

mortgage risk, 550 million euros from exposure to U.S. bond insurance companies, and 400 million euros in additional provisions against the risk that those losses would grow. The Company also announced that one of the bank's futures traders, Jérôme Kerviel ("Kerviel") had lost the bank 4.9 billion euros (the equivalent of approximately 7.2 billion dollars).[2] In response to the Company's shocking news, two credit rating agencies, Fitch and Moody's, immediately downgraded the bank's long term debt ratings: from AA to AA- (Fitch); and from Aal/B to Aa2/B- (Moody's).

Moreover, just before these disclosures were made, Defendant Robert A. Day ("Day"), a U.S. executive and board member of the Company and company insider, sold more than $140 million of SG stock at artificially inflated prices during the Class Period. Defendant Day's sales are currently under investigation by the U.S. Department of Justice, the SEC, and French regulators.

The emergence of the truth of the Company's financial situation at the end of the Class Period caused SG's stock price, including its ADRs and other securities, to drop significantly, thereby damaging investors, including the New Jersey Funds Group.

The New Jersey Funds Group, with losses of approximately $1,409,263 in connection with its purchases of SG securities during the Class Period, is suitable and adequate to serve as Lead Plaintiff.[3] Movant has submitted a sworn certification signed by George Laufenberg on

---

[2] An interim report published on February 20, 2008 by three independent SG board members revealed that SG had ignored or failed to act upon seventy-five alerts that should have put the Company on notice of Kerviel's purportedly unauthorized massive trading activity from 2005 through early 2008. This report also highlighted that SG's operating staff "did not systematically carry out more detailed checks," and that certain controls that might have detected the fraud were absent and unaccounted for.

[3] The losses suffered by Movant are not the same as its legally compensable damages, measurement of which is often a complex legal question that cannot be determined at this stage

behalf of Movant the New Jersey Funds Group, demonstrating Movant's desire to serve as the

Lead Plaintiff. *See* Bronson Decl., Ex. A.[4]

To the best of its knowledge, Movant's losses represent the largest known financial

interest of any Class member seeking to be appointed as Lead Plaintiff. *See* Bronson Decl., Ex.

B. Movant is not aware of any other class member that has filed an action or filed an application

for appointment as Lead Plaintiff that has sustained greater losses. In addition, Movant satisfies

each of the requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure and

therefore is qualified for appointment as Lead Plaintiff in this Action. Thus, as demonstrated

herein, Movant is presumptively the most adequate plaintiff and should be appointed Lead

Plaintiff.

Movant respectfully submits this Memorandum of Law in support of its motion, pursuant

to Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the PSLRA, for

an order: (1) consolidating the related actions; (2) appointing the New Jersey Funds Group as

Lead Plaintiff pursuant to the PSLRA; (3) approving Movant's selection of Milberg, and Gardy

& Notis as Co-Lead Counsel in this action and in any subsequently filed and/or related cases;

and (4) granting such other and further relief as the Court may deem just and proper.

---

of the litigation. The approximate losses can, however, be determined from the certification
required under Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(2)(A) and based upon
reference to information concerning the current market for the Company's securities.

[4] Unless otherwise indicated, all exhibit references herein refer to the Declaration of Kent A.
Bronson in Support of the Motion of the New Jersey Carpenters Annuity and Pension Funds for
Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Co-Lead Counsel
submitted herewith (the "Bronson Decl.").

## ARGUMENT

### I.    THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation is appropriate where there are actions involving common questions of law or fact. Fed. R. Civ. P. 42 (a). Pending before this Court are four related actions, each of which asserts class claims on behalf of those who purchased or otherwise acquired SG securities for alleged violations of the Exchange Act during the Class Period. The Actions each name the Company and certain of its officers and/or directors as defendants and involve the same factual and legal issues, namely, whether plaintiffs purchased or otherwise acquired SG securities at artificially inflated prices as a result of defendants' allegedly false and misleading statements, and whether defendants' conduct violates Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5. Consolidation is appropriate when, as here, there are actions involving common questions of law or fact. *See* Fed. R. Civ. P. 42(a); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). That test is met here. Therefore, the Actions should be consolidated.

### II.    MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

The New Jersey Funds Group should be appointed Lead Plaintiff because it has complied with all of the PSLRA's requirements, is believed to have the largest financial interest in this litigation and otherwise meets the relevant requirements of Fed. R. Civ. P. 23.

#### A.    THE REQUIREMENTS OF THE PSLRA

The PSLRA establishes a procedure that governs the appointment of a Lead Plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(l) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). The plaintiff in the first-filed, above-captioned

action caused notice to be published pursuant to the PSLRA on *Business Wire* on March 12, 2008.[5]

Second, within 60 days of publishing the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 78u-4(a)(3)(A) and (B).

Finally, within 90 days after publication of the initial notice of pendency, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that:
>
> > (aa) has either filed the complaint or made a motion in response to a notice . . .
> >
> > (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> >
> > (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii). *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 402-04 (S.D.N.Y. 2004).

---

[5] *See* Bronson Decl., Ex. C. National news wire services have been recognized as suitable vehicles for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service." *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996); *Lax v. First Merchs. Acceptance Corp.*, No. 97-C-2715, 1997 U.S. Dist. LEXIS 11866, at *2 (N.D. Ill. Aug. 6, 1997).