**B.    MOVANT SATISFIES THE LEAD PLAINTIFF REQUIREMENTS OF THE PSLRA**

**1.    Movant Has Complied With The PSLRA, Is The Most Adequate Plaintiff Under the PSLRA, And Should Be Appointed Lead Plaintiff**

Movant's instant application is filed within the time period in which class members may move to be appointed Lead Plaintiff in this case, under 15 U.S.C. § 78u-4(a)(3)(A) and (B), which expires on May 12, 2008. Movant has reviewed the allegations in the instant action against SG and is willing to serve as a representative party on behalf of the Class. *See* Bronson Decl., Ex. A (Certification of the New Jersey Funds Group). In addition, Movant has selected and retained highly experienced and competent counsel to represent it and the Class. *See* Bronson Decl., Exs. D and E (attaching firm résumés of Milberg and Gardy & Notis).

Accordingly, the New Jersey Funds Group has satisfied the individual requirements of 15 U.S.C. § 78u-4(a)(3)(B) and its application for appointment as Lead Plaintiff, and its selection of Milberg and Gardy & Notis as Co-Lead Counsel, should be approved by the Court.

**2.    Movant Has the Requisite Financial Interest in the Relief Sought by the Class**

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as Lead Plaintiff the Class member who represents the largest financial interest in the relief sought by the action. *See In re Cavanaugh*, 306 F.3d. at 730 ("[T]he district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit."); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) (identification of the most adequate plaintiff, "begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'") (*quoting* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)).

The PSLRA, however, does not provide a method for determining the relative financial interests of lead plaintiff movants and courts are generally divided on how relative financial

interest should be determined. Some courts have adopted the "FIFO" (First-In-First-Out) methodology. Under this methodology, first-purchased shares (even if purchased before the class period) are offset against first-class period sales. *See, e.g., Goplen v. 51job, Inc.*, No. 05 Civ. 0769, 2005 U.S. Dist. LEXIS 15059, at \*8 (S.D.N.Y. July 26, 2005).

During the Class Period, as evidenced by, among other things, the accompanying signed Certifications and chart showing Movant's Class Period transactions (*see* Bronson Decl., Exs. A and B), the New Jersey Funds Group has purchased 105,360 SG American Depository Receipts (ADRs) representing ownership in SG shares trading on U.S. financial markets, at prices artificially inflated by the materially false and misleading statements issued and/or lack of material disclosures by defendants, and were injured thereby. In addition, the New Jersey Funds Group incurred a substantial FIFO loss of approximately $1,409,263 on its transactions in SG stock.

Moreover, the New Jersey Funds Group incurred an identical loss under the "LIFO" (Last-In-First-Out) methodology, which other courts have adopted. Under this methodology, last-purchased shares are offset against first-class period sales and any remaining shares sold during the class period are generally offset against shares held at the beginning of the class period. For purchase transactions that are not matched to sell transactions that occurred during the Proposed Class Period, the 90-day average hold price is applied. In this case, Movant did not have any pre-Class Period SG holdings. As such, the LIFO analysis yields the same financial interest from that calculated using the FIFO analysis, a loss of approximately $1,409,263.

As demonstrated herein, Movant has a large financial interest in this case during the Class Period and under the FIFO and LIFO methodologies:

| Movant | Losses (FIFO or LIFO) |
|---|---|
| New Jersey Funds Group | ($1,409,263.74) |

Therefore, Movant satisfies all of the PSLRA's prerequisites for appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u4(a)(3)(B). *See* Bronson Decl., Ex. B.

### 3.    Movant Otherwise Satisfies Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "'otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure.'" *See In re Cavanaugh*, 306 F.3d. at 730. Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two -- typicality and adequacy -- directly address the personal characteristics of the class representative. Consequently, in deciding a motion for Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the

435033_1.DOC

10

motion for class certification. *See id.*; *see also Lax v. First Merchs. Acceptance Corp.*, 997 U.S. Dist. LEXIS 11866, at \*20; *Fischler v. Amsouth Bancorporation*, No. 96-1567-CIV-T-17A, 1997 U.S. Dist. LEXIS 2875, at \*7-8 (M.D. Fla. Feb. 6, 1997); *Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 412. As detailed below, Movant satisfies both the typicality and adequacy requirements of Rule 23, thereby further justifying its appointment as Lead Plaintiff.

### a.    Movant Fulfills the Typicality Requirements

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985); *see also Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986); *Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 412; *Babcock v. Computer Assocs. Int'l*, 212 F.R.D. 126, 130 (E.D.N.Y. 2003). The requirement that the proposed class representative's claims be typical of the claims of the class does not mean, however, that the claims must be identical. *See Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 412; *Philips v. Joint Legislative Comm. on Performance & Expenditure Review*, 637 F.2d 1014, 1024 (5th Cir. 1981). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted that determines whether the class representatives are typical. *See Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988) ("With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class] members") (citation omitted). Since the plaintiffs seek to prove that defendants "committed the same unlawful acts in the same method against an entire class . . . all members of this class have identical claims . . . . [t]herefore, the certification of the suit as a class action

satisfied the requirements of Rule 23(a)(3)." *Kennedy v. Tallant,* 710 F.2d 711,717 (11th Cir. 1983).

Movant seeks to represent a class of purchasers of SG securities that have virtually identical, non-competing and non-conflicting interests. Movant satisfies the typicality requirement because, as with all other Class members, it: (1) purchased or otherwise acquired SG securities during the Class Period; (2) purchased or otherwise acquired SG securities at artificially inflated prices as a result of the same allegedly materially false and misleading statements and/or omissions; and (3) suffered economic loss thereby when the price of SG stock declined upon the revelation of the misrepresentations made to the market, and/or the information alleged in the complaint to have been concealed from the market, removing the inflation from SG's stock price. Thus, Movant's claims are typical of those of other Class members since its claims and the claims of other Class members are identical or substantially similar and arise out of the same course of events.

## b.    Movant Fulfills the Adequacy Requirement

Under Rule 23(a)(4), the representative parties must fairly and adequately protect the interests of the class. The PSLRA directs this Court to limit its inquiry regarding the adequacy of Movant to represent the Class to the existence of any conflicts between the interest of Movant and the other members of the Class. Thus standard for adequacy is met if it appears that (1) the named plaintiff has interests in common with, and not antagonistic to, the class' interests; and (2) the plaintiff's attorneys are qualified, experienced and generally able to vigorously conduct the litigation. *See, e.g., Kirkpatrick v. J. C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987); *see also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 800 (3d Cir. 1995); *Babcock*, 212 F.R.D. at 131 (citation omitted).

As detailed above, Movant is an adequate representative of the Class because it shares common questions of law and fact with the members of the Class and its claims are typical of the claims of other Class members. As evidenced by the injury suffered by Movant, who acquired 105,360 shares of SG stock during the Class Period at prices artificially inflated by defendants' materially false and misleading statements and/or omissions, the interests of Movant are clearly aligned with the interests of the members of the Class, and there is no evidence of any antagonism between Movant's interests and those of the other members of the Class.

Further, Movant has already taken significant steps demonstrating that it has protected and will continue to protect the interests of the Class: it executed a Certification detailing its Class Period transactions and expressing its willingness to serve as Lead Plaintiff; it moved this Court to be appointed as Lead Plaintiff in this action; and it retained competent and experienced counsel who, as shown below, will be able to vigorously conduct this complex litigation in a professional and efficient manner. *See generally Lax*, 1997 U.S. Dist. LEXIS 11866, at *21-25.

### 4.    The New Jersey Funds Group Is An Institutional Investor With The Largest Financial Interest In The Relief Sought

The New Jersey Funds Group is a classic example of the sort of Lead Plaintiff envisioned by Congress in its enactment of the PSLRA -- a sophisticated institutional investor with a real financial interest in the litigation. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist the courts by improving the quality of representation in securities class actions").

The legislative history of the PSLRA demonstrates that it was intended to encourage institutional investors, such as the New Jersey Funds Group, to serve as lead plaintiff. The explanatory report accompanying the PSLRA's enactment specifically states that:

> The Conference Committee seeks to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring courts to presume that the member of the purported class with the largest financial stake in the relief sought is the "most adequate plaintiff."

> \*    \*    \*

> The Conference Committee believes that . . . in many cases the beneficiaries of pension funds - small investors - ultimately have the greatest stake in the outcome of the lawsuit. Cumulatively, these small investors represent a single large investor interest. Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.

H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in*, 1995 U.S.C.C.A.N. 730, 733.

Courts around the country have noted a Congressional preference to appoint institutional investors. *See, e.g., In re Faro Techs. Sec. Litig.*, No. 6:05-CV-1810-ORL-22 (DAB), 2006 U.S. Dist. LEXIS 235007, at \*8-9 (M.D. Fla. Apr. 26, 2006) (favoring proposed institutional investor lead plaintiff); *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1331 (N.D. Ala. 2000) (noting aim of PSLRA was to encourage institutional investors to control securities class actions); *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 548 (N.D. Tex. 1997) ("through the PSLRA, Congress has unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors"); *Schulman v. Lumenis, Ltd.*, No. 02 Civ. 1989 (DAB), 2003 U.S. Dist. LEXIS 10348, at \*9-10 (S.D.N.Y. June 17, 2003) (one purpose behind the PSLRA is "to ensure that 'parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel'") (citation omitted). "Congress believed that this could best be achieved by encouraging institutional investors to serve as lead plaintiffs." *Id.* at \*10. *See also*

435033_1.DOC                                        14

*In re Cendant Corp. Litig.*, 264 F.3d at 244 (Congress "anticipated and intended that [institutional investors] would serve as lead plaintiffs.")[6]

Indeed, Congress deemed institutional investors "presumptively most adequate to serve as lead plaintiffs in securities class actions." *Greebel*, 939 F. Supp. at 63. Furthermore, Congress believed that "increasing the role of institutional investors in class actions would ultimately benefit shareholders and assist courts by improving the quality of representation in securities class action." *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 221 (D.D.C. 1999); *Ravens v. Iftikar*, 174 F.R.D. 651, 661 (N.D. Cal. 1997) (stating that Congress wanted to encourage large, sophisticated institutional investors to direct securities class actions, thereby supplanting the prior regime of "figurehead plaintiffs who exercise no meaningful supervision of litigation"). Congress reasoned that the empowerment of institutional investors would result in the appointment of lead plaintiffs that can best prosecute the claims and are best able to negotiate with and oversee counsel. *See In re Razorfish Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 309 (S.D.N.Y. 2001) (stating that Congress intended that "institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation . . . ."); *Gluck*, 976 F. Supp. at 548 ("The legislative history of the Reform Act is replete with statements of Congress' desire to put control of such litigation in the hands of large, institutional investors").

---

[6] *See also Bowman v. Legato Sys., Inc.*, 195 F.R.D. 655, 657 (N.D. Cal. 2000) (institutional investors are "exactly the type of lead plaintiff envisioned by Congress when it instituted the [PSLRA] lead plaintiff requirements . . ."); *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1020 (N.D. Cal. 1999) ("Congress expected that the lead plaintiff would normally be an institutional investor . . . .").

This presumption is rooted in Congress' belief that "increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts." S. Rep. No. 10498, at 11 (1995). In reaching this conclusion, Congress reasoned that:

> Institutions' large stakes give them an incentive to monitor, and institutions have or readily could develop the expertise necessary to assess whether plaintiffs' attorneys are acting as faithful champions for the plaintiff class.

Elliot J. Weiss & John S. Beckerman, *Let The Money Do The Monitoring: How Institutional Investors Can Reduce Agency Costs In Securities Class Actions*, 104 Yale L.J. 2053, 2095 (1995) ("Weiss & Beckerman"). *See also* S. Rep. No. 104-98, at 11 n.32 (noting that Weiss & Beckerman provided "the basis for the most adequate plaintiff provision").

The New Jersey Funds Group is ideally suited for the lead plaintiff role. The New Jersey Funds Group has purchased more than 105,360 SG ADRs and experienced approximately $1,409,263 in losses during the Class Period. As a large institutional investor with significant resources dedicated to overseeing and supervising the prosecution of the litigation, the New Jersey Funds Group will be able to actively represent the class and "drive the litigation" to ensure that the Class obtains the best recovery possible. *See Gluck*, 976 F. Supp. at 549 (citation omitted).

Movant has the largest known financial interest, which gives it "an incentive to prosecute the case vigorously." *Ferrari v. Gisch*, 225 F.R.D. 599, 607 (C.D. Cal. 2004). Accordingly, Movant, in addition to having the largest financial interest, also *prima facie* satisfies the typicality (Rule 23(a)(3)) and adequacy (Rule 23(a)(4)) requirements of Rule 23 of the Federal Rules of Civil Procedure and, therefore, satisfy all elements of the Exchange Act's prerequisites for appointment as Lead Plaintiff in this action pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii).

### III.    THE COURT SHOULD APPROVE MOVANT'S CHOICE OF CO-LEAD COUNSEL

Movant's choice of Co-Lead Counsel satisfies the requirements of the PSLRA. Pursuant to 15 U.S.C § 78u-4(a)(3)(B)(v), the Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the Class. The Court should not disturb the Lead Plaintiffs choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). *See also In re Cavanaugh*, 306 F.3d 726. Movant has selected and retained Milberg[7] and Gardy & Notis to serve as Co-Lead Counsel for the Class.  Milberg and Gardy & Notis both possess extensive experience litigating securities class actions and have both successfully prosecuted numerous securities class actions on behalf of injured investors. *See* Bronson Decl., Exs. D and E. Thus, the Court may be assured that by approving the New Jersey Fund's Group choice of lead counsel, the class will receive the highest caliber of legal representation.

### CONCLUSION

For the reasons stated above, Movant satisfies the requirements of the PSLRA and is the most adequate plaintiff in this action, and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B). As the most adequate plaintiff, Movant respectfully requests that the Court: (1) consolidate the related actions; (2) appoint Movant as Lead Plaintiff pursuant to the PSLRA; (3) approve Movant's selection of Milberg and Gardy & Notis as Co-Lead Counsel in this action and in any subsequently filed and/or related cases; and (4) grant such other and further relief as the Court may deem just and proper.

---

[7] Movant has been advised that Milberg, and three former named partners (who are no longer with the firm) were indicted, the nature of the charges, and the status of those proceedings.

Dated: May 12, 2008

Respectfully submitted,

**MILBERG LLP**

By: /s/ Kent A. Bronson
Kent A. Bronson
One Pennsylvania Plaza, 49th Floor
New York, New York 10119
Telephone:     (212) 594-5300
Facsimile:      (212) 868-1229
kbronson@milberg.com

**GARDY & NOTIS, LLP**
Mark C. Gardy
James S. Notis
440 Sylvan Avenue, Suite 110
Englewood Cliffs, New Jersey 07632
Telephone:     (201) 567-7377
Facsimile:      (201) 567-7337
mgardy@gardylaw.com
jnotis@gardylaw.com
*Proposed Co-Lead Counsel for the Class*

**KROLL HEINEMAN, LLC**
Albert G. Kroll
Metro Corporate Campus I
99 Wood Avenue South, Suite 307
Iselin, New Jersey 08830
Telephone:     (732) 491-2100
Facsimile:      (732) 491-2120
akroll@krollfirm.com

*Counsel for Movant New Jersey Carpenters
Annuity and Pension Funds*

435033_1.DOC

18