UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHILLIP J. BARKETT, JR., <br><br> Plaintiff, <br><br> -against- <br><br> SOCIÉTÉ GÉNÉRALE, DANIEL BOUTON, and ROBERT A. DAY, <br><br> Defendants. | Civil Action No. 1:08-CV-2495 (GEL) |
| CITY OF TAYLOR EMPLOYEES RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> -against- <br><br> SOCIÉTÉ GÉNÉRALE GROUP, DANIEL BOUTON, and ROBERT A. DAY, <br><br> Defendants. | Civil Action No. 1:08-CV-2752 (GEL) |
| HAROLD OBERKOTTER, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> -against- <br><br> SOCIÉTÉ GÉNÉRALE, DANIEL BOUTON, and ROBERT A. DAY, <br><br> Defendants. | Civil Action No. 1:08-CV-2901 (GEL) |

**THE NEW JERSEY CARPENTERS ANNUITY AND PENSION FUNDS'
MEMORANDUM OF LAW IN OPPOSITION
<u>TO COMPETING LEAD PLAINTIFF MOTIONS</u>**

**PRELIMINARY STATEMENT**

There are presently four competing motions[1] to appoint lead plaintiffs in this securities class action against Société Générale ("SG" or the "Company") brought pursuant to the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").[2] The PSLRA provides that in assessing the competing motions, the Court "shall adopt a presumption" that the most adequate plaintiff is the movant with the "largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

The Court should appoint the New Jersey Carpenters Annuity and Pension Funds (the "New Jersey Fund") as lead plaintiff because its loss figure of ($1,406,440.02), as correctly reflected in the chart previously submitted on May 12, 2008, as Exhibit B to the Bronson Declaration, is the largest loss of any movant seeking sole appointment as lead plaintiff.

While the self-styled "Institutional Investor Group"[3] claims larger aggregate losses, the Court should reject that group as a lawyer-driven amalgam of unrelated institutional investors assembled by lawyers to claim larger losses under the PSLRA. The Court should likewise reject the likely offer of the Institutional Investor Group to select only one or two of its members for

---

[1] A fifth movant, the Police and Fire Retirement System of the City of Detroit, withdrew its motion on May 22, 2008.

[2] The claims arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a) and Securities Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5.

[3] The Institutional Investor Group is composed of four separate and unrelated entities, including: the Vermont Pension Investment Committee, Boilermaker-Blacksmith National Pension Fund, United Food and Commercial Workers Union-Employer Pension Fund and United Food and Commercial Workers Union Local 880-Retail Food Employers Joint Pension Fund.

appointment as lead plaintiff.[4] The members of that group have already demonstrated their willingness to play along with a lawyer-driven group of four unrelated investors that serves no benefit to the class. Indeed, the group has provided no evidence of how it plans to work as a group, which is particularly important because some members of the group have losses over ten times that of other members of the group. The group has not (or cannot) provide any evidence of how such a divergent group of funds can effectively manage the litigation. Nor is there any evidence of how the group intends to resolve any conflicts among the different members of the group, also important given the unusual fact that two of the four members of the group have insignificant losses.

Appointment of the New Jersey Fund as sole lead plaintiff achieves many of the same advantages claimed by the Institutional Investor Group – a sophisticated institutional investor with large losses – without the disadvantages of the class being lead by a lawyer-driven group of unrelated investors with vastly different financial interests in the litigation.[5]

---

[4] The Syntax-Brillian Court faced a similar situation where a group of investors suggested that the court "pluck one of its top-two constituents to serve as lead plainitff" if the group was not appointed as lead plaintiff collectively. However, the court decided, "We decline to do so. The Farrukh Group moved for lead plaintiff as a group and will be evaluated as such. The willingness to abandon the group only suggests how loosely it was put together." This Court should rule similarly. *See Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204-PHX-FJM (D. Ariz. Apr. 4, 2008) (Order at 7) (Attached hereto as May 30 Bronson Decl. Ex. A).

Unless otherwise indicated, all exhibit references herein refer to the Declaration of Kent A. Bronson in Support of the New Jersey Carpenters Annuity and Pension Funds' Memorandum of Law in Opposition to Competing Lead Plaintiff Motions submitted herewith (the "May 30 Bronson Decl.").

[5] The remaining movants have losses far lower that the New Jersey Fund. Movant Harold Oberkotter's losses are only $41,480.60. While the Oklahoma Firefighters Retirement and Pension Systems ("Oklahoma Firefighters") claims large losses of €1,157,035.24, that calculation is vastly inflated by improperly including "in-and-out" transactions prior to any disclosure of misconduct at the Company. Losses from such in-and-out transactions are not recoverable under *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) (a securities plaintiff

**ARGUMENT**

I.  **THE INSTITUTIONAL INVESTOR GROUP IS AN ARTIFICIAL GROUP OF UNRELATED INVESTORS WITH VASTLY DIFFERENT FINANCIAL INTERESTS IN THE LITIGATION**

Although the PSLRA allows groups to serve as lead plaintiffs, "[t]o allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff." *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005) (Owen, J.) (rejecting unrelated group of institutional investors as lead plaintiffs); *see also Goldberger v. PXRE Group, Ltd.*, No. 06-CV-3410 (KMK), 2007 WL 980417, at *5 (S.D.N.Y. Mar. 30, 2007) (Karas, J.) (noting conflicting rulings in the district, agreeing that the assessment of a lead plaintiff group is contextual, and declining to appoint an unrelated group that "shares only this lawsuit in common.").

The Institutional Investor Group was brought together for the sole purpose of aggregating their claims to become the presumptive lead plaintiff. There are four members of the group. Two members, the Vermont Pension Investment Committee ($3,442,044.21 losses) and Boilermaker-Blacksmith National Pension Fund ($2,792,097.83 losses), have a financial interest in the litigation that dwarfs that of the other two members, United Food and Commercial Workers Union-Employer Pension Fund ($235,539.31 losses) and United Food and Commercial Workers Union Local 880-Retail Food Employers Joint Pension Fund ($378,228.50 losses). Based on the papers that the Institutional Investor Group has submitted to the Court, it appears that the group is comprised of completely unrelated investors with no relationship outside of this litigation. There is no explanation of why the group was formed or how the formation of the

---

must allege and prove a casual connection between the alleged fraudulent statement or conduct and the plaintiff's economic loss). The Oklahoma Firefighters' retained just 6,354 shares at the end of the class period, for losses of approximately €320,000.

4

group benefits the class. There is no explanation why the two members with significant losses agreed to include two other members with insignificant losses, or whether the significant investors or insignificant investors are leading the group. Indeed, there is no evidence supporting this artificial group's cohesiveness, like-mindedness or ability to function as a unified group. To enjoy the rebuttable presumption of the PSLRA, there must be some evidence that the members of the group will act collectively and separately from their lawyers. *See, e.g., In re Tarragon Corp. Sec. Litig.*, No. 07 Civ. 7972 (PKC), 2007 WL 4302732, at *1 (S.D.N.Y. Dec. 6, 2007) (Castel, J.) (declining to appoint a group where "[t]here has been no showing that the members of either 'group' have, in fact, functioned as a group.").

The Class will not benefit from appointment of an artificial group to lead this litigation. The New Jersey Fund, by contrast, composed of two sister pension funds managed by the same administrative manager,[6] is a classic example of the exact kind of lead plaintiff envisioned by Congress in its enactments of the PSLRA – a sophisticated institutional investor with a real financial interest in the litigation. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (explaining that "increasing the role of institutional investors in the class actions will ultimately benefit shareholders and assist the courts by improving the quality of representation in securities actions"); *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 309 (S.D.N.Y. 2001) (Rakoff, J.) ("the Azimut Group has no independent existence and its composite members have no prior relationship, there is nothing to suggest that they will collectively ride herd on counsel anywhere as well as could a single sophisticated entity."). The New Jersey Fund is best suited for the lead plaintiff role because it purchased more than 105,360 SG American Depository Receipts ("ADRs") and lost $1,406,440.02 during the Class Period. With such a

---

[6] *See* May 12 Bronson Decl. Ex. A.

large financial loss, the New Jersey Fund has "an incentive to prosecute the case vigorously" and will be the best investor to "fairly and adequately protect the interests" of the Class. *Ferrari v. Gisch*, 225 F.R.D. 599, 607 (C.D. Cal. 2004). The New Jersey Fund satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure and therefore satisfies all elements of the Exchange Act's prerequisites for appointment as Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii).

## II. THE OKLAHOMA FIREFIGHTERS' LOSSES ARE INFLATED BY NON-COMPENSIBLE LOSSES FROM "IN-AND-OUT" TRADES

The Oklahoma Firefighters are largely "in-and-out" purchasers who sold the vast majority (77.22%) of their shares prior to the end of the class period, and thus prior to any corrective disclosure or revelation of fraud. Such traders may potentially have no damages – even if the trades result in a loss – because such losses were not caused by any impact of fraudulent conduct on the market. *See Dura*, 544 U.S. at 342 (if "the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss").[7]

The corrective disclosure here is SG's January 23, 2008 announcement that it would unexpectedly be writing down €2.05 billion for the fourth quarter of 2007, and that one of the bank's futures traders, Jérôme Kerviel had lost the bank €4.9 billion. Economic losses on shares sold by the Oklahoma Firefighters before this announcement and price drop are unrelated to the alleged financial misstatements, not recoverable as damages, and render the Oklahoma

---

[7] "When the purchaser subsequently resells such shares, even at a lower price, that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price." *Dura*, 544 U.S. at 342-43.

Firefighters unsuitable as a lead plaintiff. *See In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 333 (S.D.N.Y. 2005) (McMahon, J.) ("Decatur sold all its stock in January 2005, prior to the issuance of the curative disclosure on February 10, 2005. Under the reasoning of the United States Supreme Court in [*Dura*], I question whether Decatur Plan can prove loss causation-or, for that matter, loss. The Decatur Plan is, at the very least, subject to a unique defense. . . ."); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825, 2007 WL 680779, at *4 (E.D.N.Y. Mar. 2, 2007) (Garaufis, J.) ("it is clear that under *Dura* and its progeny, any losses that [the Plumbers and Pipefitters National Pension Fund] may have incurred before Comverse's misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in this litigation. While the *Dura* Court decided a motion to dismiss, and not a lead plaintiff motion, the logical outgrowth of that holding is that any such losses must not be considered in the *recoverable* losses calculation that courts engage in when selecting a lead plaintiff.")[8]

Here, the Oklahoma Firefighters purchased and sold 21,542 shares through in-and-out trades. By excluding these non-compensable losses, the Oklahoma Firefighters's losses are

---

[8] Judge Garaufis in *Comverse* went on to provide a compelling example in a footnote: "It is clear that courts cannot include non-recoverable losses in a calculation of each litigant's financial interest. To illustrate the point, the court offers the following example: If a plaintiff in this case had alleged that it suffered losses from sales of Comverse stock in 1990, years before any alleged misconduct (stock options backdating) had even begun, it is undisputed that such losses would not be recoverable. It follows that a court would be remiss to include such losses in calculating a litigant's approximate recoverable loss, simply because a plaintiff included those losses in its complaint. The facts of this case present a similar challenge. Before calculating a plaintiff's financial interest, the court must first determine what portion, if any, of a plaintiff's losses constitute potential *recoverable* losses for purposes of the necessary PSLRA/Olsten-Lax analysis. And under *Dura,* failure to demonstrate loss causation constitutes a fatal flaw that necessitates removing those losses from the financial interest calculation." *In re Comverse*, 2007 WL 680779, at *5 n.6.

reduced to approximately €320,000 (from its claimed €1,157,035.24). These losses are far lower than the $1,406,440.02 losses of the New Jersey Fund.

## CONCLUSION

For the reasons stated herein and in all of the prior submissions of the New Jersey Fund, the Court should grant the New Jersey Fund's motion in all respects and deny the motions of the competing movants.

Dated: May 30, 2008                                     Respectfully submitted,

**MILBERG LLP**


By: /s/ Kent A. Bronson
Kent A. Bronson
One Pennsylvania Plaza, 49th Floor
New York, New York 10119
Telephone:    (212) 594-5300
Facsimile:    (212) 868-1229
kbronson@milberg.com

**GARDY & NOTIS, LLP**
Mark C. Gardy
James S. Notis
440 Sylvan Avenue, Suite 110
Englewood Cliffs, New Jersey 07632
Telephone:    (201) 567-7377
Facsimile:    (201) 567-7337
mgardy@gardylaw.com
jnotis@gardylaw.com

*Proposed Co-Lead Counsel for the Class*

**KROLL HEINEMAN, LLC**
Albert G. Kroll
Metro Corporate Campus I
99 Wood Avenue South, Suite 307
Iselin, New Jersey 08830
Telephone:    (732) 491-2100
Facsimile:    (732) 491-2120
akroll@krollfirm.com

*Counsel for Movant New Jersey Carpenters*
*Annuity and Pension Funds*

# **CERTIFICATE OF SERVICE**

I, Kent A. Bronson, a member of the law firm Milberg LLP, hereby certify that I caused a true and correct copy of the following documents to be served with the Clerk of the Court using the CM/ECF system, which will send notifications of filing to the CM/ECF participants listed on the attached Service List, and caused all counsel listed on the Service List to be served by regular U.S. Mail on this 30th day of May 2008:

1. THE NEW JERSEY CARPENTERS ANNUITY AND PENSION FUNDS' MEMORANDUM OF LAW IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS; AND

2. DECLARATION OF KENT A. BRONSON IN SUPPORT OF THE NEW JERSEY CARPENTERS ANNUITY AND PENSION FUNDS' MEMORANDUM OF LAW IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS.

           /s/ Kent A. Bronson
           Kent A. Bronson

i

*Société Générale*

**SERVICE LIST**

| | |
|---|---|
| ***Counsel for Plaintiffs:*** | |
| Elizabeth A. Berney<br>**COHEN, MILSTEIN, HAUSFELD**<br>  **& TOLL, P.L.L.C.**<br>150 East 52nd Street, 30th Floor<br>New York, NY  10022<br>Telephone: (212) 838-7797<br>Facsimile: (212) 838-7745<br>Email: eberney@cmht.com | Steven J. Toll<br>Daniel S. Sommers<br>Matthew K. Handley<br>**COHEN, MILSTEIN, HAUSFELD**<br>  **& TOLL, P.L.L.C.**<br>1100 New York Avenue, N.W.<br>West Tower, Suite 500<br>Washington, D.C.  20005<br>Telephone: (202) 408-4600<br>Facsimile: (202) 408-4699<br>Email: stoll@cmht.com<br>        dsommers@cmht.com<br>        mhandley@cmht.com |
| Samuel H. Rudman<br>**COUGHLIN STOIA GELLER RUDMAN**<br>  **& ROBBINS, LLP**<br>58 South Service Road, Suite 200<br>Melville, NY  11747<br>Telephone: (631) 367-7100<br>Facsimile: (631) 367-1173<br>Email: SRudman@csgrr.com | Darren J. Robbins<br>Matthew P. Montgomery<br>**COUGHLIN STOIA GELLER RUDMAN**<br>  **& ROBBINS, LLP**<br>655 West Broadway, Suite 1900<br>San Diego, CA  92101<br>Telephone: (619) 231-1058<br>Facsimile: (619) 231-7423<br>Email:  darrenr@csgrr.com<br>         mattm@csgrr.com |
| Joseph H. Weiss<br>James E. Tullman<br>Richard A. Acocelli<br>**WEISS & LURIE**<br>551 Fifth Avenue<br>New York, NY  10176<br>Telephone: (212) 682-3025<br>Facsimile: (212) 682-3010<br>Email:  jweiss@weisslurie.com<br>         jtullman@weisslurie.com<br>         racocelli@weisslurie.com | Jules Brody<br>**STULL, STULL & BRODY**<br>6 East 45th Street<br>New York, NY  10017<br>Telephone: (212) 687-7230<br>Facsimile: (212) 490-2022<br>Email:  ssbny@aol.com |

| | |
|---|---|
| Ira M. Press<br>Peter S. Linden<br>**KIRBY & MCINERNEY LLP**<br>930 Third Avenue, 10th Floor<br>New York, NY 10022<br>Telephone: (212) 371-6600<br>Facsimile: (212) 751-2540<br>Email: ipress@kmllp.com<br>           plinden@kmllp.com | |

| | |
|---|---|
| ***Counsel for Defendants:*** | |
| Joseph Serino, Jr.<br>Mark Holscher<br>**KIRKLAND & ELLIS LLP**<br>Citicorp Center, 153 East 53rd Street<br>New York, NY 10022-4675<br>Telephone: (212) 446-4800<br>Facsimile: (212) 446-4900 | Scott D. Musoff<br>Joseph A. Matteo<br>**SKADDEN, ARPS, SLATE, MEAGHER<br> & FLOM LLP**<br>Four Times Square<br>New York, NY 10036<br>Telephone: (212) 735-3000<br>Facsimile: (212) 735-2000 |

iii