DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/29/10

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
IN RE SOCIÉTÉ GÉNÉRALE SECURITIES           :           08 Civ. 2495 (RMB)
LITIGATION                                                     :
------------------------------------------------------------x           **DECISION & ORDER**

### I.      Introduction

This is a consolidated securities class action against Société Générale ("SocGen"), a

French company whose stock is traded on the Euronext Paris stock exchange, Daniel Bouton,

SocGen's former Chairman and Chief Executive Officer ("CEO") ("Bouton"), Jean-Pierre

Mustier, former CEO of both SocGen's corporate and investment banking unit, and its asset

management division ("Mustier"), Robert A. Day, a SocGen director ("Day"), Philippe Citerne,

a former SocGen director and Co-CEO ("Citerne"), and Didier Alix ("Alix"), special advisor to

SocGen's current CEO (together "Individual Defendants") (collectively, with SocGen,

"Defendants").  Plaintiffs allege that Defendants violated the federal securities laws, particularly

Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b)

("Section 10(b)"), Rule 10b-5 promulgated thereunder, Section 20(a) of the Exchange Act, id.

§ 78t(a) ("Section 20(a)"), and Section 20A of the Exchange Act, id. § 78t-1 ("Section 20A").

Specifically, Plaintiffs Vermont Pension Investment Committee ("Vermont"), Boilermaker-

Blacksmith National Pension Fund ("Boilermaker"), and United Food and Commercial Workers

Union Local 880–Retail Food Employers Joint Pension Fund ("UFCW") (collectively,

"Plaintiffs") claim that during the period August 1, 2005 to January 25, 2008 ("Class Period"),

Defendants misled investors by, among other things, failing to put in place adequate internal risk

controls, concealing the extent and nature of SocGen's exposure to the U.S. subprime mortgage

market, and making false financial statements.[1]  (Second Amended Compl. ("SAC") ¶¶ 1, 3–8.)

Vermont and Boilermaker each own SocGen ordinary shares, traded under the symbol GLE on

---

[1]      At a July 12, 2010 status conference, the parties consented to dismissal of plaintiff Avon
Pension Fund.  (See Tr. of Proceedings, dated July 12, 2010 [#109], at 5:14-15.)

the Euronext Paris stock exchange; and UFCW owns SocGen American Depository Receipts ("ADRs"), traded on the over-the-counter market in New York under the symbol SCGLY.  (SAC ¶¶ 37–39, 41.)

On August 12, 2008, Vermont was appointed lead plaintiff and Robbins Geller Rudman & Dowd LLP were appointed lead counsel by Judge Gerard E. Lynch, then United States District Judge, Southern District of New York.  On October 1, 2009, the case was reassigned to this Court.

On April 15, 2010, Defendants filed a motion to dismiss ("Defs.' Mot.") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  On May 28, 2010, Plaintiffs filed their opposition to Defendants' motion ("Pls.' Opp'n") and also on that date moved to lift partially a stay of discovery under the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(3)(B) ("PSLRA"), i.e., to allow discovery limited to subject matter and personal jurisdiction.

The parties supplemented their submissions to this Court in light of Morrison v. National Australia Bank, Ltd., in which the Supreme Court "reject[ed] the notion that the Exchange Act reaches conduct in this country affecting exchanges or transactions abroad" and adopted the so-called "transactional test" pursuant to which "Section 10(b) reaches the use of a manipulative or deceptive device or contrivance only in connection with the purchase or sale of a security listed on an American stock exchange, and the purchase or sale of any other security in the United States."  130 S. Ct. 2869, 2885, 2888 (2010).  (See Defendants' Reply Memorandum of Law in Support of Their Motion to Dismiss, dated Aug. 2, 2010 ("Defs.' Reply"); Plaintiffs' Sur-Reply Addressing the Impact of Morrison and Further Seeking Leave to Take Personal Jurisdiction Discovery, dated Aug. 28, 2010 ("Pls.' Sur-reply").)

Defendants argue, among other things, that: (1) under <u>Morrison</u>, neither Vermont nor Boilermaker, who are "U.S. Plaintiffs who conceded they purchased SocGen shares on a foreign exchange, . . . can bring a Section 10(b) claim"; and (2) "Plaintiffs have failed to state a claim [against all Defendants] under Section 10(b) of the Exchange Act or SEC Rule 10b-5," "failed to state a claim against the Individual Defendants for insider trading," and "fail[ed] to allege a [control person] violation of Section 20(a)." In light of "marketwide phenomena," SocGen's choice of "an incremental measured response to the global financial crisis . . . does not create a cogent inference of scienter." (Defs.' Reply at 6; Defs.' Mot. at 11, 18, 29–30, 38.)[2]

Plaintiffs contend, among other things, that: (1) <u>Morrison</u> "does not affect" the §10(b) claims of plaintiffs Vermont and Boilermaker because they made "domestic purchases" of SocGen ordinary shares; and (2) "[t]he complaint sufficiently pleads a claim under §10(b) and Rule 10b-5"; "the Individual Defendants are liable under Rule 10b-5 . . . because they profited through illicit insider sales after directly participating in a deceptive scheme aimed at artificially inflating SocGen's stock price"; and, because Individual Defendants "controlled SocGen by virtue of their high-level positions and responsibilities at the Company, . . . the complaint properly alleges control person claims . . . under §20(a)." (Pls.' Sur-reply at 1; Pls.' Opp'n at 11, 34, 36.)[3]

**For the reasons set forth below, Defendants' motion to dismiss is granted.**

## II.    Background

For purposes of this motion, the allegations of the Second Amended Complaint, or SAC, are taken as true. <u>See</u> <u>Almonte v. City of Long Beach</u>, 478 F.3d 100, 104 (2d Cir. 2007).

---

[2]      Defendants do not argue that the claims of Plaintiff UFCW, which owns SocGen ADRs, should be dismissed under <u>Morrison</u>. (Defs.' Reply at 1 n.2.)

[3]      The parties agreed that this motion, if granted, would be decided with prejudice. (<u>See</u> Tr. of Proceedings, dated July 12, 2010 [#109], at 9:11, 9:25–10:1 (THE COURT: "[T]his motion is dispositive"; MR. ROSENFELD: "[T]hen we are not going to amend.").)

SocGen, a French company, "specializes in equity derivative securities, which includes arbitrage and trading futures on the world's largest options exchanges." (SAC ¶ 2.)  Plaintiffs' allegations revolve around "SocGen's [2008] trading scandal," in which "SocGen trader Jerome Kerviel ('Kerviel') engaged in un-hedged, directional trades (bets on whether the market will rise or fall) which exposed [SocGen] to huge losses" ("Kerviel Fraud").  (SAC ¶ 4.)  Kerviel was part of the "Delta One" group, a division of Société Générale Corporate & Investment Banking ("SGCIB"), which "offers corporate banking and fixed income services and securities through its branch in New York."  (SAC ¶ 43.)  SocGen issued a statement on January 24, 2008 ("January 24, 2008 Release"), stating:

> one trader, responsible for plain vanilla futures hedging on European equity market indices, had taken massive fraudulent directional positions in 2007 and 2008 beyond his limited authority.  Aided by his in-depth knowledge of the control procedures resulting from his former employment in the middle-office, he managed to conceal these positions through a scheme of elaborate fictitious transactions.

According to an organizational chart included in the SAC, Kerviel worked approximately five levels of supervision below each of the Individual Defendants.  (SAC ¶ 64.)  Also, in the January 24, 2008 Release, SocGen stated that "[i]n light of the worsening of the US residential mortgage crisis, the Group will apply new writedowns of Euro 1.1bn in Q4 07, consistent with the valuation levels of the ABX indices where they exist."  (SAC ¶ 184 (quoting the January 24, 2008 Release).)

Plaintiffs allege that as a result of the Kerviel Fraud and subprime-related disclosures, "artificial inflation was removed from the price of SocGen securities, with shares of SocGen stock declining from €79.08 to €75.81 in one day [$103.16 to $98.89]."  (SAC ¶ 185.)

**Section 10(b) and Rule 10b-5 Claims**

Plaintiffs' (204-page) Second Amended Complaint contains three principal categories of allegations as follows:  (1) SocGen knowingly made false statements regarding the quality of its

4

internal risk control systems which permitted the Kerviel Fraud to occur; (2) SocGen knowingly made false statements regarding the extent and risks associated with its Collateralized Debt Obligation ("CDO") and Residential Mortgage Backed Securities ("RMBS") portfolio; and (3) SocGen issued false financial statements. These statements allegedly caused "SocGen's stock [to fall] precipitously" in January of 2008. (See SAC ¶¶ 7, 12, 118–120, 158–162, 458.)

### SocGen's Internal Risk Control Systems

Plaintiffs allege that SocGen stated that its internal risk control systems were "highly sophisticated," but, in fact, such systems' lack of adequate trader supervision "facilitated" the Kerviel Fraud. (SAC ¶¶ 7, 277, 280.) Plaintiffs allege that SocGen knew or should have known of the Kerviel Fraud because it had received "dozens of alerts as to Kerviel's conduct." (See SAC ¶¶ 149, 211–212.) Plaintiffs further allege that Kerviel "insisted that his superiors knew what he was doing," and his superiors had referred to him as "la cash machine." (SAC ¶¶ 200, 207, 204–05.) Plaintiffs conclude that "[t]he failure of [SocGen's] risk control management systems allowed [Kerviel] . . . to place €50 billion of unhedged, directional trades, which, when ultimately unwound, resulted in a €4.9 billion loss for [SocGen]." (SAC ¶ 210.)

### SocGen's RMBS and CDO Exposure

Plaintiffs allege that SocGen stated that its exposure to RMBS and CDOs was "low," "negligible," "very limited," and "under control"; that the subprime market was "gradually improving"; and that SocGen would have "no further write-downs" of its credit market assets, but, in fact, such statements failed "to disclose . . . SocGen's actual and growing exposure to RMBS and CDO assets." (SAC ¶¶ 167, 176–177, 142.) Plaintiffs allege that SocGen knew such statements were false or misleading because, among other things, "by mid-2007 . . . the value of [loans underlying RMBS and CDOs] began to decline rapidly" and SocGen "transition[ed] from

5

valuing these assets using the mark-to-market valuation method to the mark-to-model valuation method." (SAC ¶¶ 232, 234.)

### SocGen's Financial Statements

Plaintiffs allege that as a result of the Kerviel Fraud SocGen was forced to restate its income for each quarter of 2007, and that SocGen violated International Financial Report Standards ("IFRS") by failing to disclose its true exposure to CDOs and RMBS. (SAC ¶ 323.)

### Individual Defendants

Plaintiffs allege that, under the group-pleading doctrine and because of Individual Defendants' involvement as "control persons" in the day-to-day operations at SocGen, the Individual Defendants should be held liable for the alleged SocGen misstatements and omissions under Section 20(a) of the Exchange Act. (See SAC ¶¶ 87–92, 483–486.) Plaintiffs further allege that the Individual Defendants engaged in insider trading in that: Day sold approximately 1.5 million shares in early January 2008, before public disclosure of the Kerviel Fraud; Mustier sold half of his stock in SocGen several weeks after SocGen told investors that it had low exposure to the subprime crisis; Bouton sold 65% of his shares during the Class Period; Citerne sold 81% of his shares during the Class Period; and Alix sold 81% of his shares during the Class Period. (See SAC ¶¶ 285–295, 487–489.)

## III.    Legal Standard

"[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" S. Cherry Street, LLC v. Hennessee Group LLC, 573 F.3d 98, 110 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. --, 129 S. Ct. 1937, 1949 (2009)). The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 129 S. Ct. at 1949). "A complaint asserting securities fraud must also satisfy the

heightened pleading requirement of Federal Rule of Civil Procedure 9(b), which requires fraud to be alleged with particularity." Kalnit v. Eichler, 264 F.3d 131, 138 (2d Cir. 2001).

"Section 10(b) reaches the use of a manipulative or deceptive device or contrivance only in connection with the purchase or sale of a security listed on an American stock exchange, and the purchase or sale of any other security in the United States." Morrison, 130 S. Ct. at 2888. "[I]t is the foreign location of the **transaction** that establishes (or reflects the presumption of) the [Exchange] Act's inapplicability. . . . [W]e reject the notion that the Exchange Act reaches conduct in this country affecting exchanges or transactions abroad." Id. at 2885 (emphasis in original). "Trade in ADRs is considered to be a 'predominantly foreign securities transaction.'" Copeland v. Fortis, 685 F. Supp. 2d 498, 506 (S.D.N.Y. 2010) (quoting In re SCOR Holding (Switzerland) AG Litig., 537 F. Supp. 2d 556, 562 (S.D.N.Y. 2008)).

"To state a claim under § 10(b) and the corresponding Rule 10b-5, a plaintiff must plead that the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that the plaintiff's reliance on the defendant's action caused injury to the plaintiff." Ganino v. Citizens Util. Co., 228 F.3d 154, 161 (2d Cir. 2000). A plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2); see Novak v. Kasaks, 216 F.3d 300, 310 (2d Cir. 2000). "[T]o determine whether a complaint's scienter allegations can survive threshold inspection for sufficiency, a court . . . must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff, . . . but also competing inferences rationally drawn from the facts alleged. An inference of fraudulent intent may be plausible, yet less cogent than other, nonculpable explanations for the defendant's conduct." S. Cherry, 573 F.3d at 111 (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 314 (2007)).

## IV.    Analysis

### (1)    <u>Morrison</u>

Though Defendants argue that only Vermont and Boilermaker should be dismissed under <u>Morrison</u>, the Court finds that <u>Morrison</u> compels dismissal of all three Plaintiffs – Vermont, Boilermaker, and UFCW – for the reasons set forth below.

#### Vermont and Boilermaker

According to Defendants, Plaintiffs' position, that "<u>Morrison</u> does not cover U.S. investors who purchase a foreign company's shares on a foreign exchange[,] has no support and should be rejected" because such a reading of <u>Morrison</u> "would simply restore the now-rejected 'conduct' and 'effects' tests." (Defs.' Reply at 5–6); <u>see</u> <u>Cornwell v. Credit Suisse Group</u>, No. 08 Civ. 3758, 2010 WL 3069597, at *8–10 (S.D.N.Y. July 27, 2010); <u>Stackhouse v. Toyota Motor Co.</u>, No. 10 Civ. 0922, 2010 WL 3377409, at *2 (C.D. Cal. July 16, 2010).

Plaintiffs counter that "<u>Morrison</u>'s concept of 'domestic transactions' or 'domestic purchases' encompasses [the instant] transactions in which United States investors purchase foreign securities in the United States, even if the securities happen to be listed on a foreign exchange." (Pls.' Sur-reply at 6.)  Plaintiffs seek to limit the application of <u>Morrison</u> to its facts – i.e., where foreign plaintiffs purchase a foreign corporation's securities on a foreign exchange. (Pls.' Sur-reply at 4.)  Plaintiffs argue that "[n]either Vermont nor Boilermaker traveled to France to acquire SocGen stock"; that SocGen's foreign listing "does not change the domestic character of [Plaintiffs'] contracts"; and that because Congress was "presumably familiar" with "common-law <u>lex loci</u> principles" when it enacted the Exchange Act, "[i]t may be entirely appropriate . . . to look to the common law" to determine the locus of securities transactions. (Pls.' Sur-reply at 7, 8.)

Where, as here, domestic plaintiffs purchased shares of a foreign bank traded on a foreign exchange, the Exchange Act is inapplicable, and Plaintiffs Vermont and Boilermaker have not shown otherwise. See Cornwell, 2010 WL 3069597, at *1; see also In re Alstom SA Sec. Litig., No. 03 Civ. 6596, 2010 WL 3718863, at *2 (S.D.N.Y. Sept. 16, 2010) (Morrison warranted dismissal where plaintiffs purchased defendant's shares on a foreign exchange but where those shares were also available for purchase on a U.S. exchange); Terra Sec. v. Citigroup, Inc., No. 09 Civ. 7058, 2010 U.S. Dist. LEXIS 84881, at *4–5, *12–13 (S.D.N.Y. Aug. 16, 2010) (Morrison warranted dismissal where plaintiff had purchased a Norwegian securities firm's fund-linked notes arranged by a U.S. bank for sale to U.S. investors); Sgalambo v. McKenzie, No. 09 Civ. 10087, 2010 U.S. Dist. LEXIS 79688, at *2, *70 (S.D.N.Y. Aug. 6, 2010) (Morrison warranted dismissal where plaintiff purchased defendant's shares on the Toronto Stock Exchange, despite defendant's shares also being sold on the American Stock Exchange). "Domestic transactions" under Section 10(b) are defined as "purchases and sales of securities explicitly solicited by the issuer within the United States rather than transactions in foreign-traded securities where the ultimate purchaser or seller has physically remained in the United States." Stackhouse, 2010 WL 3377409, at *1.

Defendants' position, that the Exchange Act is inapplicable to the purchases of SocGen ordinary shares by Vermont and Boilermaker, conforms to Morrison's rejection of the conduct and effects tests. See Morrison, 130 S. Ct. at 2881.[4] By asking the Court to look to the location of "the act of placing a buy order," and to the "the place of the wrong," Plaintiffs are asking the

---

[4]      In Morrison, the Supreme Court rejected the so-called "conduct" and "effects" tests because, among other reasons, they "were not easy to administer," producing differing results "depending on whether the harmed investors were American or foreigners." Morrison, 130 S. Ct. at 2879, 2881, overruling, e.g., Itoba Ltd. v. Lep Group PLC, 54 F.3d 118 (2d Cir. 1995); SEC v. Berger, 322 F.3d 187 (2d Cir. 2003). The Supreme Court also abandoned the practice of "inquir[ing] whether it would be reasonable ([i.e., whether] Congress would have wanted) to apply the [Exchange Act] to a given situation." Id.

Court to apply the conduct test specifically rejected in <u>Morrison</u>. (Pls.' Sur-reply at 7, 9); <u>cf.</u> <u>Morrison</u>, 130 S. Ct. at 2884 ("[T]he focus of the Exchange Act is not upon the place where the deception originated."); <u>see</u> <u>Cornwell</u>, 2010 WL 3069597, at *3 ("[T]o carve out of the new rule [Plaintiffs'] purchase or sale of securities on a foreign exchange because some acts that ultimately result in the execution of the transaction abroad take place in the United States amounts to nothing more than the reinstatement of the conduct test."). And, by asking the Court to turn to common-law principles "with which Congress was presumably familiar," Plaintiffs disregard <u>Morrison</u>'s admonition against "using congressional silence as a justification for judge-made rules, [violating] the traditional principle that silence means no extraterritorial application [of the Exchange Act]." (Pls.' Sur-reply at 8); <u>Morrison</u>, 130 S. Ct. at 2881.

Accordingly, Defendants' motion to dismiss the claims of Vermont and Boilermaker is granted. <u>See</u> <u>Cornwell</u>, 2010 WL 3069597, at *3; <u>In re Alstom SA Sec. Litig.</u>, 2010 WL 3718863, at *2; <u>Terra Sec.</u>, 2010 U.S. Dist. LEXIS 84881, at *12–13; <u>Sgalambo</u>, 2010 U.S. Dist. LEXIS 79688, at *70; <u>Stackhouse</u>, 2010 WL 3377409, at *1.

**UFCW**

As noted, even though Defendants do not argue that UFCW's claims should be dismissed under <u>Morrison</u>, (<u>see</u> <u>supra</u> note 2) the Court concludes that the Exchange Act is inapplicable to UFCW's ADR transactions. That is, the Court finds that, because "[t]rade in ADRs is considered to be a 'predominantly foreign securities transaction,'" Section 10(b) is inapplicable.[5] <u>Copeland</u>, 685 F. Supp. 2d at 506. An ADR "represents one or more shares of a foreign stock or a fraction of a share." <u>Id.</u> (quoting U.S. Securities & Exchange Commission ("SEC"), International Investing, <u>available at</u> http://www.sec.gov/ investor/pubs/ ininvest.htm); <u>see also</u>

---

[5]      Courts have also held that Section 10(b) is inapplicable to transactions in which a plaintiff purchases ADRs on a U.S. exchange. <u>Cornwell</u>, 2010 WL 3069597 at *1. Here, ADRs were purchased "on the over-the-counter market." (SAC ¶ 41.)

Morrison, 130 S. Ct. at 2875 (foreign defendant's ADRs "represent the right to receive a specified number of [defendant's ordinary shares, listed on a foreign exchange]"). SocGen's ADRs "were not traded on an official American securities exchange; instead, ADRs were traded in a less formal market with lower exposure to U.S.-resident buyers." Id. (internal citations omitted). Trade in SocGen ADRs is a "predominantly foreign securities transaction." Copeland, 685 F. Supp. 2d at 506; see Cornwell, 2010 WL 3069597, at *3; Terra Sec., 2010 U.S. Dist. LEXIS 84881, at *12–13.

Accordingly, UFCW's claims are also dismissed. See Cornwell, 2010 WL 3069597, at *3; Copeland, 685 F. Supp. 2d at 506; In re Alstom SA Sec. Litig., 2010 WL 3718863, at *2; Terra Sec., 2010 U.S. Dist. LEXIS 84881, at *12–13; Sgalambo, 2010 U.S. Dist. LEXIS 79688, at *70; Stackhouse, 2010 WL 3377409, at *1.

**(2)    Exchange Act Claims**

Even assuming arguendo that Morrison did not compel dismissal of Plaintiffs' claims, the Second Amended Complaint would fail because it does not adequately plead scienter under Section 10(b) and Rule 10b-5. For that reason, it also fails to state a claim under Sections 20A or 20(a). See Slayton v. Am. Express. Co., 604 F.3d 758, 775 (2d Cir. 2010); Gissin v. Endres, No. 09 Civ. 9338, 2010 WL 3468508 (S.D.N.Y. Sept. 1, 2010).

Defendants argue, among other things, that the SAC lacks particularized facts suggesting (i) "knowledge of [Kerviel's] activities by [the Individual Defendants]," or (ii) that the Individual Defendants "received any information showing that the failure to write down [RMBS and CDOs] before the third quarter [of 2007] was incorrect, let alone fraudulent," or (iii) "that there were any

internal reports that . . . an incorrect application of accounting principles rose to the level of fraud."[6] (Defs.' Mot. at 12, 15, 18.)

In response, Plaintiffs contend, among other things, that the SAC properly pleads scienter because (i) "Kerviel's superiors knew he was making unhedged, directional bets," (ii) (unnamed) confidential witnesses "identified key meetings that Defendant Mustier and senior SocGen management in New York attended . . . where the deteriorating value of SocGen's credit market assets was discussed," and (iii) "[b]y definition, SocGen's restatement of its 2007 financial statements means that Defendants either knew of, or were reckless in not knowing, reliable and readily available information" regarding the Kerviel Fraud.[7] (Pls.' Opp'n at 22, 25, 28.)

**Scienter**

The Court evaluates a securities fraud complaint "not on the presence or absence of certain types of allegations, but on a practical judgment about whether, accepting the whole factual picture painted by the Complaint, it is at least as likely as not that [D]efendants acted with scienter." Slayton, 604 F.3d at 775. Were it to do so here, Plaintiffs' complaint would fail because it is at least as likely as not that Defendants "believed that they were taking adequate risk management and cautionary measures," and that "while the [D]efendants knew that their . . . portfolio was likely deteriorating . . . they subjectively believed that the extent of the deterioration would lead to losses that would be substantially less than" those which occurred. Woodward v. Raymond James Fin., Inc., No. 09 Civ. 5347, 2010 U.S. Dist. LEXIS 83592, at *28 (S.D.N.Y. Aug. 16, 2010); Slayton, 604 F.3d at 776.

---

[6]   Defendants also contend that Plaintiffs fail to plead actionable misrepresentations or omissions, fail to plead loss causation, fail to state a claim for insider trading, and fail to plead control person violations. (Defs.' Mot. at 28, 29, 38.)

[7]   Plaintiffs also contend that they adequately allege materially false and misleading statements, loss causation, a claim for insider trading, and a control person violation. (Pls.' Opp'n at 12, 32, 35–37.)

Section 10(b)'s "required strong inference" of scienter "may arise where the complaint sufficiently alleges that the defendants . . . knew facts or had access to information suggesting that their public statements were not accurate." Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc., 531 F.3d 190, 194 (2d Cir. 2008). Plaintiffs must allege with particularity that defendants "actually were aware of such facts." S. Cherry, 573 F.3d at 114 (allegations that defendants "would have learned" facts is insufficient); see Campo v. Sears Holding Corp., 371 F. App'x 212, 216–17 (2d Cir. 2010) (allegations that corporate officers "could" have received reports are insufficient). Where, as here, "information contrary to the alleged misrepresentations is alleged to have been known by defendants at the time the misrepresentations were made, the falsity and scienter requirements are essentially combined." In re JP Morgan Chase Sec. Litig., 363 F. Supp. 2d 595, 625 (S.D.N.Y. 2005); see Rothman v. Gregor, 220 F.3d 81, 89–90 (2d Cir. 2000).

Plaintiffs' "amalgam of suggestions" that Defendants were aware of facts suggesting that their public statements regarding internal risk controls and subprime holdings were inaccurate and false do not give rise to the inference of scienter. City of Brockton Ret. Sys. v. Shaw Group Inc., 540 F. Supp. 2d 464, 475 (S.D.N.Y. 2008); see id. at 473 ("It is not enough for . . . plaintiff to allege that, because executives . . . were closely involved in [the corporation's] business, one can strongly infer that they were furnished with financial data which contained the 'errors' that later required restatement."); In re Bank of Am. Corp., No. 09 MD 2058, 2010 WL 3448194, at *39 (S.D.N.Y. Aug. 27, 2010) (an executive's "statement that [corporation] had reduced its risk was not equivalent to stating that [corporation] had altogether eliminated its risk"); Woodward, 2010 WL 3239411, at *9 (a complaint "contain[ing] general allegations about 'internal reports' and 'economic indicators,' without specifying the content of those reports or the connection between those reports and the misstatements at issue in [the] case" fails to adequately plead

13

scienter); Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 115 (2d Cir. 1982) ("[S]ection 10(b) was not designed to regulate corporate mismanagement."). And, where, as here, a defendant's statements regarding the efficacy of its risk management systems are "no more than 'puffery,'" – i.e., "too general to cause a reasonable investor to rely upon them" – they do not give rise to securities law violations. (Defs.' Reply at 18–19); ECA Local 134 IBEW Joint Pension Trust v. JP Morgan Chase Co., 553 F.3d 187, 205–06 (2d Cir. 2009) ("No investor would take such statements seriously in assessing a potential investment, for the simple fact that almost every investment bank makes these statements."); see also In re Am. Int'l Group, Inc., 2008 Sec. Litig., No. 08 Civ. 4772 (S.D.N.Y. Sept. 27, 2010) (distinguishable on its facts).

Nor do Plaintiffs adequately plead that Defendants had knowledge that any failure to write down SocGen's subprime assets was misleading or fraudulent. Allegations of knowledge of a general economic (subprime) trend "do not equate to harboring a mental state to deceive, manipulate or defraud." Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce, 694 F. Supp. 2d 287, 300 (S.D.N.Y. 2010); see In re Sec. Capital Assur. Ltd. Sec. Litig., No. 07 Civ. 11086, 2010 WL 1372688, at *26 (S.D.N.Y. Mar. 31, 2010) ("Defendants, like so many other institutions floored by the housing market crisis could not have been expected to anticipate the crisis with the accuracy plaintiffs enjoy in hindsight.") (internal citations, quotation marks, and alterations omitted).

With respect to Plaintiffs' allegations that Defendants made false financial statements, "allegations of [accounting] violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim." Novak, 216 F.3d at 309 (internal citations and quotation marks omitted); see Brockton Ret. Sys., 540 F. Supp. 2d at 473 ("[I]t is well settled

that mere fact of a restatement of earnings does not support a strong, or even a weak, inference of scienter."); (See supra p. 6.)[8]

**Claims under Sections 20A and 20(a)**

Plaintiffs' insider trading claims under Section 20A and control person claims under Section 20(a) are "necessarily predicated on a primary violation of securities law." Rombach v. Chang, 355 F.3d 164, 177–78 (2d Cir. 2004). Because Plaintiffs' primary claims under Section 10(b) and Rule 10b-5 are dismissed, "these secondary claims must also be dismissed." Id.; see Boguslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir. 1998); Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., Inc., 32 F.3d 697, 703 (2d Cir. 1994).

**IV.    Conclusion and Order**

For the reasons stated herein, Defendants' motion to dismiss is granted in its entirety (and with prejudice). (See Tr. of Proceedings, dated July 12, 2010 [#109], at 9:11, 9:25–10:1.) The Clerk of the Court is respectfully requested to close this case.

Dated: September 29, 2010
       New York, New York

*RMB*

_____
RICHARD M. BERMAN, U.S.D.J.

---

[8]     Because the Complaint does not adequately plead scienter, the Court need not address Defendants' arguments contesting falsity or loss causation. See Ato Ram, II, Ltd. v. SMC Multimedia Corp., No. 03 Civ. 5569, 2004 WL 744792, at *6 (S.D.N.Y. Apr. 7, 2004) ("Because plaintiff did not adequately plead the element of scienter, [the court did not need to] address defendants' other arguments concerning [plaintiff's] failure to plead the remaining elements with particularity.").